Delores Fay PRATER and John Ernest Prater, Appellants,

v.

ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY, a Corporation, Respondent.

No. 51739.

Supreme Court of Missouri, Division No. 2.

Jan. 9, 1967.

Arthur C. Popham, Sr., E. E. Thompson, Kansas City, for appellants, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

George L. Gordon, Sam D. Parker, Jack W. R. Headley, Joseph E. Stevens, Jr., Kansas City, for respondent, Lathrop, Righter, Gordon & Parker, Kansas City, of counsel.

STOCKARD, Commissioner.

Plaintiffs, John Ernest Prater and Delores Fay Prater, husband and wife, have appealed from an adverse judgment entered pursuant to a jury verdict in their action for damages in the amount of $40,000 for personal injuries to Delores, and for $25,-000 for the wrongful death of their infant son.

In view of the single issue on this appeal, an abbreviated statement of the facts is sufficient. On October 29, 1960, Delores was a passenger in an automobile operated by her sister-in-law, Patsy O'Brien, and while traveling westerly in a hard rain on U. S. Highway 40 in the State of Kansas, Delores was injured when the automobile was struck at a grade crossing by defendant's train. According to Patsy, as she approached the crossing she listened and looked for a train, but did not see nor hear the train until her automobile was only a few feet from the track. She then applied her brakes and slid onto the track with the car swerving to the left so that the rear of the automobile was toward the north. The train struck the rear of the automobile and pushed it down the track about 160 feet. According to the engineer, he did not sound the whistle at the "whistle post," but started sounding it about 800 feet from the crossing. When the train was 500 to 600 feet from the crossing he saw the automobile in which Delores was riding, and as it approached the crossing it went into a skid and skidded onto the track when the engine was about 50 feet from the crossing. There was an automatic lighted "wig-wag" signal at the crossing, but both Delores and Patsy testified that although they were looking straight ahead neither observed the signal working. After the collision, Patsy did observe that the signal was then working.

At the time of the collision Delores was more than six months pregnant. Her child was subsequently born prematurely and died on May 2, 1961. Plaintiffs alleged that the child's death was the result of injuries it received in the collision prior to its birth.

Delores' case for her personal injuries, and the case of Delores and her husband for the wrongful death of their child were each submitted to the jury on the negligence of defendant in failing to give the warning required by Section 66–2,120, GRS Kans., or in permitting a growth of weeds, shrubbery and brush of five feet or more on its right of way in such a way to obstruct the view to the north of persons approaching the crossing in an automobile traveling west. Section 66–2,120, in substance, provided that defendant was to sound a whistle four times, two long and two short blasts, commencing at least 80 rods from the crossing where the collision occurred, and its failure to do so would be negligence.

In oral argument to the jury, counsel for defendant presented the contention that the failure of defendant's engineer to start sounding a whistle 80 rods before the crossing was not a proximate cause of the collision. In his argument he said that "they [apparently plaintiffs' counsel] weren't even able to get Patsy or Delores Prater to say or to guess for you that blowing the whistle any longer would have made any difference," and that the engineer "had been blowing that whistle in a standard crossing whistle [two longs and two shorts] and then short toots for seventeen seconds." He then said: "Well now, what possible good could it have done for that whistle to have been blowing another seventeen seconds when the train and the car were twice as far away from each other as they were when he started blowing the whistle eight hundred feet from the crossing." Later during oral argument the following occurred:

"Now, I want to talk a minute about this whistle, and I want to talk about

the Instructions while I am talking about it. Even assuming that some technical Kansas Statute had a requirement about blowing a whistle eighty rods back—

"Mr. Popham: [counsel for plaintiffs] (Interrupting) Just a minute, Your Honor, I want to object to counsel denouncing the law of Kansas and talking about technical statutes in Kansas. It is the law and I object to him branding it as such.

"The Court: The jury will pay attention to the evidence, and that is all.

"Mr. Stevens: I don't have anything against the law of Kansas, Mr. Popham, even assuming then that some well-meaning Kansas Statute requires that a whistle be blown for eighty rods, and it wasn't,—assuming that it wasn't—when you are considering this upstairs [referring to the jury room] and reading Instructions Two and Three in the light of it, ask yourself this question. What difference did it make? What conceivable difference there, under those circumstances, did it make whether Irvin Weil [the engineer] blew that whistle for seventeen seconds or thirty-four seconds, because in seventeen seconds Delores Prater could have seen that train and warned the driver, or the driver could have seen that train and started to slow that car easily and readily, if they had been paying attention."

On this appeal plaintiffs assert that the trial court committed prejudicial error "in overruling, in effect, plaintiffs' objection to that portion of defendant's closing argument in which its counsel referred to the State of Kansas requiring a whistle on a locomotive to be sounded at least eighty rods from a public crossing, as a ' * * * technical Kansas Statute' having 'a requirement about blowing a whistle eighty rods back,' and the court aggravated such error and further erred by instructing the jury to ' * * * pay attention to the evidence, and that is all,' thereby placing its stamp of approval on the conduct of defendant's

counsel as being proper." They assert that the statement by counsel in argument "constituted an erroneous statement of law" and was "particularly prejudicial in view of defendant's admitted violation of the Statute."

Plaintiffs cite no case which in any way supports their contention that the reference by counsel to the requirement that defendant sound a whistle eighty rods from a public crossing as a "technical Kansas Statute" was an "erroneous statement of law." They present the tenuous argument that the comment was designed to plant in the minds of the jury the idea that the statute was a mere technical one requiring only token compliance. We cannot agree. The defendant's evidence established a violation of the statute, and noncompliance was admitted in oral argument. By Instruction No. 2 the jury was told that the defendant was legally required to sound a whistle four times commencing at least 80 rods from the place where the railroad crossed said roadway, "and any failure of defendant to do so would be negligence." Defendant's oral argument was directed to the contention that failure to sound the whistle earlier than it was sounded was not the proximate cause of the collision, an argument it was entitled to present under the evidence. See Kendrick v. Atchison, Topeka & Santa Fe Railroad Company, 182 Kan. 249, 320 P.2d 1061. Defendant's characterization of the Kansas statute as "technical" was not clearly erroneous. The word has a variety of meanings and uses, but in Webster's Third New International Dictionary one of its definitions is "of or relating to a particular subject." The Kansas statute was a "technical" statute within that definition. Counsel for plaintiffs could reply in argument, and in fact a reply was made in this case. The comment by counsel was not an "erroneous statement of law," and we do not see how the jury possibly could have been misled by this statement, or how plaintiffs could have been prejudiced by it.

Plaintiffs also assert that "the error was aggravated by the court's action

in admonishing the jury to pay attention to the evidence, and that's all." We have concluded that no prejudicial error occurred by the statement used by counsel, and for that reason there was no aggravation of error. The use of the phrase, "and that is all" may have been an unfortunate choice of words, but when considered in context it is readily apparent that any reasonable jury would understand that it had been told to pay attention to, or be guided by, the evidence as distinguished from characterizations by counsel made in oral argument. In addition, counsel made no objection to the comment by the court, and made no request that the court advise the jury that it should be guided by the evidence and the court's instructions.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.